■ In the Matter of Douglas Burke, Appellant, v Thomas A. Coughlin, III, as Commissioner of the New York State Department of Correctional Services, et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Bradley, J.), entered November 1, 1982 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* annul a determination made by respondents after a superintendent's proceeding which affirmed charges of misconduct. On December 13, 1981, petitioner was an inmate at the Auburn Correctional Facility confined to a cell in the special housing unit (SHU) under administrative protection (i.e., for nondisciplinary reasons). At about 2:00 P.M. on that day, Correction Officers (C.O.) Grebleski and Clarke went to his cell to take him to make a phone call to his family. Outside petitioner's cell, C.O. Clarke began a pat frisk of petitioner who vigorously objected to the manner in which the frisk was being carried out, claiming that the guard's hands were improperly "going over my bottom". The pat frisk was not completed. Two inmates corroborated petitioner's assertion. Thereafter, a struggle occurred at the phone room between petitioner and C.O. Clarke. Sergeant Mahunik and C.O. Grebleski joined in the fracas and petitioner was restrained. Descriptions of the incident by correction officers differed from that given by petitioner. However, the version given by C.O. Pratt, the only officer petitioner requested to testify for him, was similar to that related by petitioner with the exception of who beat whom. As a result of this fracas, petitioner sustained swelling in the left cheek, abrasions on the upper and lower lips and the right shoulder, a fracture of the nasal bone, and possibly a chipped tooth. C.O. Clarke received lacerations on the left ear, right cheek and under the right eye. C.O. Grebleski injured his right hand. It was alleged that petitioner injured himself when he banged his head and face against the wall in attempting to free his head from the grip of Clarke's hand. Misbehavior reports were filed charging petitioner with violation of three prison disciplinary rules and the matter was referred to a superintendent's proceeding. On December 17, 1981, an employee assistant

was offered to and accepted by petitioner, who requested that the assistant interview three inmates. Summaries of the inmates' statements were taken and recorded the day of the initial superintendent's proceeding on December 18. At the first session of the superintendent's proceeding, petitioner denied all the charges, gave his version of the facts and again requested that three inmates be interviewed as well as C.O. Pratt. According to the hearing officer, interviews of the three inmates had not yet been completed and the hearing was adjourned to take their statements and to interview C.O. Pratt. The latter interview was to be done by the hearing officer himself. The hearing officer conducted interviews of the four correction officers who witnessed or were involved in the incident. These were electronically recorded and subsequently transcribed. No electronically recorded interviews were conducted with the inmates. On December 30, at the second session of the superintendent's proceeding, the hearing officer again read the charges. Petitioner again denied them and the hearing officer then commented: "Based upon their testimony I find that the charges are affirmed and that on 12/13/81 first of all it started". After a discussion of the evidence and the conclusions he drew therefrom, interspersed by petitioner's comments, the hearing officer concluded that petitioner would receive 365 days in SHU to be served consecutively with any time still owed, and would lose 365 days of good time. A report issued on January 5, 1982 also recommended transfer to another institution. Five months later, the Commissioner of the Department of Correctional Services reviewed and affirmed the proceedings. This CPLR article 78 proceeding challenging that determination followed. Special Term dismissed the petition and this appeal by petitioner ensued. There must be a reversal. Respondents violated both New York regulations and due process by interviewing and electronically recording only one of the four witnesses petitioner requested at the superintendent's proceedings. Two rights of petitioner are involved here. The constitutional right of due process requires that when a witness is interviewed, the inmate must either be present or receive a tape or transcript of the interview or an explanation of the denial (*Powell v Ward,* 487 F Supp 917, mod on other grounds 643 F2d 924, cert den 454 US 832; *Matter of Tolden v Coughlin,* 90 AD2d 929). The regulations give the inmate the right to have a chosen employee interview any witnesses requested in investigating the inmate's reasonable factual claims and submit a written report including statements of those witnesses (7 NYCRR 253.3). These inmate rights are of independent origin and have independent attributes (*Jacobson v Coughlin,* 523 F Supp 1247, 1254, affd 688 F2d 815, cert den ___ US ___, 103 S Ct 77; *Matter of Tolden v Coughlin, supra*). The constitutional right is not waivable unless it is shown that the prisoner was informed of its existence and made a knowing and intelligent waiver (*Matter of Santana v Coughlin,* 90 AD2d 947). The problem demonstrated by the record in this case concerns the question of whether petitioner really understood the difference between his regulatory right and his constitutional right. The record shows that petitioner was notified of both rights by way of forms. However, the record does not reveal any oral instructions given him concerning his right to call witnesses. The notification of the constitutional right petitioner received does not distinguish it in any way from the regulatory one. No explanation is made, in that notice, of the concomitant requirement that the inmate be present at the questioning of the witness or receive a tape or transcript of the interview. The dialogue between the hearing officer and petitioner at the initial hearing does not reveal that the hearing officer drew any distinction between the two rights or that petitioner understood the difference. Interviews of inmate witnesses and C.O. Pratt are referred to without distinction. It is clear that petitioner lacked awareness that his request of his employee assistant to interview inmate witnesses was not

the same as his request to interview C.O. Pratt. Thus, petitioner could make no valid and meaningful waiver of his constitutional right. Both his constitutional right to call witnesses and the New York State regulations embodying that right were violated (7 NYCRR 253.4 [b] [1]). Respondents further violated departmental regulations in affirming the charges against petitioner before summarizing the evidence against him and allowing him to respond (7 NYCRR 253.4 [e], [g]). Respondents' contention that the early affirmation by the hearing officer was merely "a careless statement" is unpersuasive. Finally, while we agree with respondents that the delay of over four months from the date of the determination until its automatic review by respondents was not a due process violation of petitioner's rights, we must conclude, however, that such delay is a clear violation of the intent of the New York State regulations (see 7 NYCRR 253.6, 270.2). A CPLR article 78 challenge to the determination was not precluded by the failure to afford petitioner timely automatic review (see *Matter of Shahid v Coughlin,* 83 AD2d 8, 11, n 3, affd 56 NY2d 987). Thus, petitioner's due process right to access to judicial review was not interrupted by that failure. Nevertheless, unless a clear time limit is read into the regulation, the purpose of the automatic review provision would likely be frustrated in many cases since the time in confinement would already have been served before its correctness could be reviewed.[*] Judgment reversed, on the law and the facts, without costs, petition granted, determination annulled, and respondents are directed to expunge all records pertaining thereto from their files. Mahoney, P. J., Mikoll, Yesawich, Jr., Weiss and Levine, JJ., concur.

---

[*] It should be noted that the departmental regulations applicable to this case were changed as of June 15, 1983. Because they are basically procedural changes, they need not be applied to these facts on appeal (*Matter of Board of Trustees [Maplewood Teachers' Assn.],* 57 NY2d 1025, 1027). However, they do resolve for future cases the issues raised herein. The changes are as follows. First, under the new regulations, all requests for witnesses, whether made to an employee assistant or a hearing officer and whether made before or during the hearing, will be treated in the manner of a request under the due process clause of the Federal Constitution (7 NYCRR 254.5 [a], [c]). Second, for the first time the regulations embody the inmate's due process right either to be present when witnesses are testifying or to hear a recording of the testimony (7 NYCRR 254.5 [b]), and additionally they give the inmate the opportunity to reply to the evidence presented (7 NYCRR 254.6 [c]). The need under the old regulations for the hearing officer to relate to the inmate the evidence supporting the charge and allow the inmate to comment before affirming no longer exists and is no longer required (7 NYCRR 254.7 [a]). Third, the provision for automatic review by the commissioner under certain circumstances has been eliminated and replaced with the requirement that the commissioner decide any appeal within 60 days of receipt (7 NYCRR 254.8).