In the Matter of CHARLES BOLE, Appellant, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Respondent.

Third Department, December 3, 1987

**APPEARANCES OF COUNSEL**

*Karen L. Murtagh-Monks* and *David C. Leven* for appellant.

*Robert Abrams, Attorney-General (Julie S. Mereson* and *Wayne L. Benjamin* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

Petitioner, an inmate at Mid-State Correctional Facility, was charged in a misbehavior report with one count of refusing a direct order from a correction officer and one count of conduct disturbing the order of the facility. After a Superintendent's hearing, petitioner was found guilty of both charges and received a penalty of 45 days' room confinement and loss of certain privileges. This determination was upheld on administrative appeal. Petitioner then brought the instant CPLR article 78 proceeding and appeals from Supreme Court's dismissal of his petition.

The altercation out of which the charges against petitioner arose took place on January 15, 1986 at the offices of the facility's Inmate Grievance Resolution Committee (IGRC), a dispute resolution mechanism set up pursuant to Correction Law § 139. Petitioner was a duly elected inmate representative to the IGRC. Correction Officer Robert Eckert, who apparently also had duties with the IGRC, stated in the misbehavior report that petitioner interrupted a conversation between a grievant and the inmate clerk of the IGRC, which he had no right to do at that point "since the grievant was using correct Directive # 4040 procedure in bringing his problem to the grievance clerk. Inmate representatives investigate the problem once it becomes a grievance." Eckert further averred that petitioner did not desist until after he received multiple orders to "quit interrupting". Shortly after, petitioner resumed this behavior and had to be ordered to leave the office. Later, petitioner returned and shouted some accusations at Eckert and other inmate representatives who were present.

The grievant with whom petitioner had attempted to converse was inmate Christopher Leone. The evidence is uncontradicted that, a day or two before this incident, petitioner and Donald O'Shea, the supervisor of the facility's IGRC program, had a disagreement over a grievance that petitioner had assisted Leone in preparing, as to whether it was a complaint within the jurisdiction of the IGRC program. O'Shea refused to permit Leone to file the grievance, whereupon Leone attempted to file an additional grievance against O'Shea. Shortly before the incident involved here, Leone was

called to O'Shea's office and told that he could file the original grievance. Leone indicated that he wished to consult further with petitioner, since there were questions of adding allegations which might have made it clearer that the complaint was grievable. O'Shea ordered Leone not to discuss the matter with petitioner. At this point, the respective versions of what transpired are in conflict. Petitioner, all of the several IGRC inmate representatives who were present and Leone testified that Leone was referred to petitioner for advice by the inmate clerk of the IGRC, and that petitioner and Leone were in a discussion when Eckert entered the office and ordered petitioner not to speak to Leone. These witnesses were all in agreement that petitioner complied with the order not to speak to Leone, although loudly expressing his objections, and that he also promptly obeyed the order to leave the office. Eckert's testimony repeated in substance the allegations of his misbehavior report, that it was improper under the IGRC procedures for petitioner to discuss Leone's grievance and that petitioner defied his orders and generally engaged in loud behavior. O'Shea also testified, stating that he overheard the noisy colloquy between Eckert and petitioner from his adjoining office, and that he observed petitioner's belligerent attitude in a brief meeting with him during the incident. O'Shea also set forth in his testimony alternative justifications for his order to Leone not to consult with petitioner concerning the grievance, i.e., that under Departmental Directive No. 4040 it was not the responsibility of an IGRC inmate representative to assist a grievant before a formal grievance was filed and that, since Leone's grievance had already been prepared with petitioner's assistance, there was no need for further consultation.

The Hearing Officer resolved all of the factual disputes against petitioner and his witnesses. Furthermore, in assessing the penalty, the Hearing Officer expressly took into account as aggravating circumstances that petitioner was an inmate representative on the IGRC and that the misconduct occurred at the IGRC office.

The determination must be annulled because of noncompliance with departmental regulations affording an inmate the right to call witnesses (see, 7 NYCRR 254.5). In the course of the hearing, petitioner requested that two witnesses be called: a Paul Garcia, whom he identified as the departmental regional director of the IGRC program and the person most familiar with the proper functions of the grievance commit-

tees and with Directive No. 4040, and a Mr. Zuckerman from the counsel's office of the Department of Correctional Services. The Hearing Officer denied both requests. The regulations mandate that an accused inmate's request to call witnesses be honored "provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals" (7 NYCRR 254.5 [a]). The only excuse proffered by the Hearing Officer for refusing petitioner's request was that "these people were not directly involved with this infraction". As to the testimony of the requested witness Garcia, petitioner made clear at the hearing that his purpose was to prove that discussing Leone's grievance and assisting him with it was within petitioner's function as an inmate representative to the IGRC and that, therefore, O'Shea's and Eckert's deliberate interference was not only unjustified but a violation of departmental procedures. Such evidence would appear to have been relevant to rebut the contrary allegations that Eckert set forth in the misbehavior report and that Eckert and O'Shea testified to at the hearing on this issue.

On appeal, however, respondent further argues that, irrespective of any illegality of the orders to petitioner and Leone not to discuss Leone's grievance, it was petitioner's duty to obey (see, Matter of Rivera v Smith, 63 NY2d 501, 515-516). Therefore, respondent contends, proof of the illegality of the orders through the witness Garcia would have been irrelevant. Respondent, however, overlooks the now clearly established rule that evidence of mitigating circumstances is relevant in a prison inmate disciplinary hearing (Matter of Coleman v Coombe, 65 NY2d 777, 780; Matter of De Mauro v LeFevre, 91 AD2d 1156, 1157). In our view, evidence that the order to petitioner not to speak to Leone was illegal could readily support the inference, which is already otherwise suggested by proof in the record, that petitioner's misbehavior was actually provoked by the arbitrary and high-handed conduct of O'Shea and Eckert. This being the case, the relevancy of Garcia's testimony was established. "Certainly the extent of any provocation was relevant at least on the issue of punishment" (Matter of Martin v Coughlin, 90 AD2d 946). Indeed, the relevance of such mitigating proof is underscored here by the fact that petitioner's punishment was apparently enhanced because of his role with the IGRC. Consequently, this case represents one of the rare instances where a prisoner's request to obtain the testimony of a correctional administrative official should have been upheld, and our decision on this issue

is limited to the specific circumstances presented herein where there was a clear demonstration of the relevancy of such testimony. Therefore, although we reject petitioner's alternative procedural and constitutional challenges to the determination, including that with respect to the failure to call the witness Zuckerman, annulment is required.

KANE, J. (dissenting). I do not agree with the conclusion that the refusal by the Hearing Officer to call one of the witnesses requested by petitioner to testify at the hearing resulted in noncompliance with 7 NYCRR 254.5. It is true that testimony concerning justification or mitigating circumstances is relevant in prison disciplinary proceedings *(see, Matter of Coleman v Coombe,* 65 NY2d 777, 780; *Matter of De Mauro v LeFevre,* 91 AD2d 1156, 1157)*. In the instant case, the testimony which petitioner was seeking from the proposed witness, Garcia, was an explanation of the inmate grievance process. Petitioner claimed that this testimony would indicate that, as an IGRC representative, petitioner had a right to discuss with Leone the latter's grievance. However, contrary to the majority's conclusion, this proposed testimony was not relevant, even assuming that petitioner was correct in his assertion that he had a right to confer with Leone. This still did not provide justification for refusing to obey Eckert's order not to speak with Leone or for causing a disturbance. As the Court of Appeals has specifically noted: "The risks inescapably attendant on the refusal of an inmate to carry out even an illegal order of a correction officer are such as to require compliance at the time with the right of retrospective administrative or judicial determination as to the legality of the order" *(Matter of Rivera v Smith,* 63 NY2d 501, 515; *see, Matter of Shahid v Coughlin,* 83 AD2d 8, *affd* 56 NY2d 987)*. Thus, the legality of Eckert's order and, consequently, Garcia's proposed testimony was not relevant. Therefore, the Hearing Officer properly denied petitioner's request to call Garcia as a witness *(cf., Matter of De Mauro v LeFevre,* 91 AD2d 1156, *supra)*.

Additionally, although the Hearing Officer in determining petitioner's punishment noted that petitioner's "disruptive behavior is even more inappropriate because of [his] position as an inmate representative to the I.G.R.C.", this did not thereby make Garcia's testimony relevant. It is true that normally testimony in mitigation of a penalty is relevant *(see, Matter of Coleman v Coombe,* 65 NY2d 777, *supra)*. Neverthe-

less, in this case the record indicates that the Hearing Officer had before him Directive No. 4040 which set forth IGRC's grievance procedure and that, in determining petitioner's punishment, he took petitioner's argument of mitigation into consideration. The proposed testimony of Garcia was thus already embodied in Directive No. 4040 and, therefore, would not have provided any new information not already before the Hearing Officer.

Accordingly, I would affirm Supreme Court's judgment dismissing the petition.

MAHONEY, P. J., MAIN and YESAWICH, JR., JJ., concur with LEVINE, J.; KANE, J., dissents and votes to affirm in an opinion.

Judgment reversed, on the law, without costs, determination annulled and matter remitted to respondent for further proceedings not inconsistent herewith.